IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

CASE NO.: **7:10-CV-**

_____

| | |
|---|---|
| Michael and Dorothy **MANUEL**,<br> for themselves<br> and all others similarly situated,<br>     *Plaintiffs*<br><br>     v.<br><br> Joseph A. **GEMBALA**, III, Esq.;<br> **JOSEPH A. GEMBALA, III,**<br> **& ASSOCIATES**,<br>  a Pennsylvania sole proprietorship and<br>  18 U.S.C. § 1961(4) association-in-fact;<br> **SECURE PROPERTY SOLUTIONS,**<br> **LLC**, a New Jersey limited<br>  liability company and<br> 18 U.S.C. § 1961(4) association-in-fact;<br> **CUSTOM ASSET SOLUTIONS,**<br> **LLC**, a New Jersey limited<br>  liability company and<br> 18 U.S.C. § 1961(4) association-in-fact; and<br> **NATIONAL MORTGAGE**<br> **CONSULTANTS GROUP**<br> **LLC**, a New Jersey limited<br>  liability company and<br> 18 U.S.C. § 1961(4) association-in-fact,<br>     *Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **CIVIL COMPLAINT**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   JURY TRIAL DEMANDED |

_____/

COME NOW Plaintiffs by and through the undersigned, and seek relief against Defendants as follows:

1.    Defendants have been engaged since at least July 2007, and are still engaged with no end in sight and no known interference from law enforcement, in a pattern of continuing racketeering activity, to wit: mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 in furtherance of a nationwide "mortgage modification" scam, and

laundering of more than $10,000 obtained from Plaintiffs in violation of 18 U.S.C. §§ 1956 and 1957, which Plaintiffs' property Defendants converted to their own use, entitling Plaintiffs to actual and punitive damages for conversion and unjust enrichment; treble damages under the U.S., New Jersey, and North Carolina Racketeer Influenced and Corrupt Organizations Acts; treble damages under North Carolina and Pennsylvania unfair trade statutes; piercing the LLC veil to correct inequities and redress fraud; imposition of a constructive trust; actual and punitive damages for common law fraud; and appointment of receivers for all Defendants, among other remedies.

2. Plaintiffs have concurrently notified North Carolina Attorney General Roy Cooper in writing per NCGS § 75D-8(c).

3. To comply with the ECF Policy Manual Section I ban on hyperlinks, which the ScanSoft PDF Create software package insists on inserting if it recognizes a web address when converting a Word document to PDF, all referenced URLs are underlined, the initial h, t, t, p, slashes, and three ws are omitted, and an underscore replaces the dot between com or other extension, e.g., this Court's site would be <u>nced_uscourts_gov</u>.

## PARTIES

4. Named Plaintiffs Michael and Dorothy Manuel are husband and wife adult citizens of North Carolina, and have the capacity to sue or be sued for their own account or in a representative capacity on behalf of others.

5. Named Plaintiffs were in North Carolina at all times relevant to this action.

6. The Class is a nationwide group of consumers against whom Defendants have committed similar violations of law.

### Defendants In General

7. All Defendants have the capacity to sue and be sued for their own accounts or in a representative capacity on behalf of others.

8. All Defendants have used instrumentalities of interstate commerce, including but not limited to the U.S. Postal Service, private delivery services, interstate wires, federally chartered national banking associations, federally insured banks and financial institutions, interstate highways, and common carriers to transmit information in furtherance of their scheme to defraud Plaintiffs, and to transfer Plaintiffs' money and other property among themselves and to third parties in interstate commerce and across state lines.

9. In addition or in the alternative, any Defendants without actual knowledge were willfully blind to the utterly fraudulent and highly profitable nature of mortgage modification scams, and avoided learning the truth about other Defendants.

### Defendants

10. Defendant Joseph A. Gembala III, Esq. is admitted to practice law in Pennsylvania, admission date 06 November 1985, PA Attorney ID 44063, primary address 1500 Walnut Street Suite 2000, Philadelphia PA 19102, alternate address 208 White Horse Pike, Suite 9, Barrington NJ 08007, and participates in the management and operation of all Entity Defendants through a pattern of racketeering activities.

11. All Entity Defendants are RICO Enterprises, i.e., racketeer influenced and corrupt organizations per 18 U.S.C. § 1961(4), NCGS § 75D-3(a), and NJS § 2C:41-1c.

12. All Entity Defendants, even those formally organized as corporations or limited liability companies, are under Mr. Gembala's domination and control in order to perpetrate fraud, crime, and inequity, and must be disregarded for purposes of attempting to limit any person's liability for any claim herein.

13.　Defendant Joseph A. Gembala, III, & Associates (JAGA) is a sole proprietorship or general partnership, primary address 1500 Walnut Street Suite 2000, Philadelphia PA 19102, alternate address 208 White Horse Pike, Suite 9, Barrington NJ 08007, may be served with process through its only known principal Joseph A. Gembala III at the same addresses, is partly engaged in the legitimate practice of law and partly in the business of mail and wire fraud in furtherance of a nationwide "mortgage modification" scheme and laundering the proceeds, and is a racketeer influenced and corrupt organization managed and operated by Joseph A. Gembala III through a pattern of racketeering activities.

14.　All other Entity Defendants serve only the purposes of luring Plaintiffs into Defendants' "mortgage modification" scheme and funneling Plaintiffs' money back to JAGA and therefore Mr. Gembala (the authorization forms found at each Entity Defendant's site specify that all monies will be paid to JAGA), while attempting to hide Mr. Gembala's interest in and control over Entity Defendants by listing strawmen as their officers and directors, and by excessively fragmenting the enterprise into at least four separate entities when only one is necessary or desirable for any legitimate business, and therefore all Entity Defendants are interchangeable or collapsible, and ultimately disregarded for purposes of limiting Mr. Gembala's or each other's liability to Plaintiffs.

15.　Defendant Secure Property Solutions, LLC (SPS) is a limited liability company organized under New Jersey law on or about 25 July 2007, filing number 0600305072, record address 68 Sandra Road, Voorhees NJ 08043, registered agent Michael Malone at the same address, is also admitted in Pennsylvania, entity number 3877641, record address 1500 Walnut Street Suite 2000, Philadelphia PA 19102, may be served through its general partners Christopher Frisch, 13 Preswick Drive, Medford NJ 08055 or Michael

Malone, 68 Sandra Drive, Voorhees NJ 08043, is an alter ego of Mr. Gembala and JAGA (a call to SPS's main number 866 712 5777 connects to a recorded greeting that directs active clients to "call the Law Firm direct at 877 857 3443"), is entirely in the business of mail and wire fraud and laundering the proceeds, and is a racketeer influenced and corrupt organization managed and operated by Joseph A. Gembala III through a pattern of racketeering activities.

16.    Defendant Custom Asset Solutions, LLC (CAS) is a limited liability company organized under New Jersey law, filing number 0400305512, business office 1500 Walnut Street Suite 2000, Philadelphia PA 19102, may be served through its officer or director John Malone, 1024 Berlin Road, Cherry Hill NJ 08034, is an alter ego or alias for Secure Property Solutions, LLC (CAS's site is almost identical to SPS's site and is labeled "Secure Property Solutions, LLC" on many pages, and sometimes describes CAS as "a division of Secure Property Solutions, LLC"), is entirely in the business of mail and wire fraud and laundering the proceeds, and is a racketeer influenced and corrupt organization managed and operated by Joseph A. Gembala III through a pattern of racketeering activities.

17.    Defendant National Mortgage Consultants Group, LLC (NMCG) is a limited liability company organized under New Jersey law, filing number 0400297588, may be served through its only known officer John T. Lynch, 117 Lancaster Avenue, Freehold NJ 07728, is an alter ego or alias for Secure Property Solutions, LLC (its listed number 877 212 7022 connects to a recorded greeting beginning "Hello, and thank you for calling Secure Property Solutions and National Mortgage"), is entirely in the business of mail and wire fraud and laundering the proceeds, and is a racketeer influenced and corrupt

organization managed and operated by Joseph A. Gembala III through a pattern of racketeering activities.

18.    Their homepages are, respectively:

gembala-law_com
securepropertysolutionsllc_com/index.html
customassetsolutions_com/
nationalmtgconsultants_com/

19.    gembala-law_com/PracticeAreas/Loan-Modification_asp refers to SPS as JAGA's "processing center."

20.    Since each RICO Enterprise's client agreement specifies that all monies from Plaintiffs go to JAGA and therefore Mr. Gembala, those two are using part of Plaintiffs' payments to pay wages, salaries, commissions, and bonuses to the RICO Enterprises' employees or agents, and each RICO Enterprise has at least some of Plaintiffs' money.

21.    Since Plaintiffs send in money after Defendants have completed the offenses of wire and mail fraud upon each Plaintiff, all of Defendants' transactions in said money are offenses of money laundering.

22.    Mr. Gembala therefore must be managing and participating in the RICO Enterprises through a pattern of racketeering activity, and reinvesting at least part of the proceeds of fraud and money laundering in the RICO Enterprises.

23.    No Defendant has any debt adjuster, mortgage solicitor, real estate sales, home financing agency, employing broker, branch office, or broker of record license.

## FACTS

24.    securepropertysolutionsllc_com/index_html, SPS's homepage, reads:

Welcome to Secure Property Solutions, the solution to all of your real estate, mortgage and investment needs.

We specialize in helping homeowners who are behind with their mortgage payments and\or are in foreclosure. As every homeowner's situation is different so are their options. Our goal is to help every homeowner who is looking for help no matter what their circumstances are.

We have a variety of resources that we utilize at Secure Property Solutions to help people in this situation. We have also built a large network of outside resources because sometimes we may feel there may be something more effective then what we can offer directly. So although your scenario may not meet our criteria, we may be able to assist you by referring your information. **We will NOT refer your information without your permission.**

If speed and experience are important and crucial to your real estate success, contact Secure Property Solutions today for help.

25. This is false and fraudulent in at least the following ways: no one company can possibly be "the solution to all of your real estate, mortgage and investment needs"; SPS is part of the problem, not the solution; SPS cannot and does not help homeowners who are delinquent or in default on their mortgages; SPS's goal is not to help homeowners, but to defraud homeowners of money without providing any useful service in return; SPS has no resources, much less "a variety of resources," to help consumers; SPS has no "network of outside resources"; and SPS has neither speed nor experience "crucial to your real estate success."

26. securepropertysolutionsllc_com/about_html, SPS's "About Us" page, reads:

**Secure Property Solutions – Service you can trust.**

Honesty. Experience. Professionalism.

Having years of experience in real estate investment and mortgage financing, Secure Property Solutions understands and appreciates the complexities that accompany certain transactions.

Often, these complexities provide roadblocks that traditional financing may never be able to overcome. This is where Secure Property Solutions excels. We specialize in finding different paths to surpass these roadblocks, regardless of poor credit, mortgage payment history or current financial situation. We will find the answer in a fast, efficient manner.

27.    This is false and fraudulent in at least the following ways: SPS provides no useful service, and is grossly untrustworthy; SPS is dishonest; no one at SPS has any significant experience that will benefit any consumer; SPS has no professionals, just salespeople, most of them with little education beyond high school; no one at SPS has any significant experience in real estate investment or mortgage financing, or appreciates the complexity of nonfraudulent real estate transactions; SPS does not excel, specialize, or even function in nontraditional financing, but does nothing more than take consumers' money without providing any useful service; and cannot obtain loans or modifications for anyone who has good credit, much less for anyone with poor credit or current difficulties.

28.    securepropertysolutionsllc_com/fhaloans_html, SPS's "Hope for Homeowners" page, reads:

> On October 1st 2008 the government laid out the future with the FHA Hope for Homeowners program.  This program is available to homeowners to help them avoid foreclosure.  The program will save roughly 400,000 at-risk families by allowing them to qualify for FHA-insured mortgages.
>
> Until now the FHA has not permitted delinquent borrowers to qualify for their loan program.  Now the FHA Hope for Homeowners program will help distressed homeowners refinance their existing, in default, loans with FHA insurance.  Also, a low credit score will not affect someone's ability to qualify for this program.
>
> A Secure Property Solutions consultant will review your situation to see if you can qualify for the FHA Hope for Homeowners program and connect you with someone who can do this mortgage for you.

29.    This is false and fraudulent in at least the following ways: SPS charges an advance fee, but no authorized FHA Hope for Homeowners counseling agency will do so, and all state housing authorities and attorneys general expressly warn consumers that up-front fees for any kind of mortgage or foreclosure relief are a sure indication of fraud; no SPS "consultant" will determine whether any consumer qualifies for Hope for

Homeowners; and no SPS "consultant" will connect any consumer with a lender.

30.   securepropertysolutionsllc_com/lossmitigation_html, SPS's "Loan Modification"

page, reads:

> The processing center of Secure Property Solutions has been contracted by the Law Firm of Joseph A. Gembala, III & Associates to assist homeowners who are behind on their mortgage payments and\or are facing mortgage foreclosure.  Due to the current economic crisis, the number of homeowners who are in default or are facing foreclosure has increased drastically.  Together Joseph A. Gembala, III & Associates and the processing center, Secure Property Solutions, LLC, have helped countless homeowners through this difficult time through the process of a loan modification.

> Contact Secure Property Solutions to discuss the possibility of a loan modification. Almost any homeowner who is struggling with mortgage payments may be a candidate for the granting of a loan modification.

> **Benefits of a loan modification, if granted, may result in any or all of the following:**

> • Lowering your monthly mortgage payment
> • Forgiveness of your past due payments
> • Lowering your interest rate to a fixed interest rate
> • Reduction of the principal balance
> • Stopping the foreclosure process

> **Why you need an experienced real estate attorney:**

> • Bank loss mitigation specialists are skilled negotiators and need to protect the interest of the bank
> • The loan modification is a legal process and, if not handled properly, may make things worse for you in the long run
> • Our attorneys and negotiators have extensive experience negotiating with banks and they understand state and federal laws as well as lending regulations
> • Our attorneys can use the Truth in Lending Act (TILA) and the Real Estate and Settlement Procedures Act (RESPA) to your advantage
> • Banks listen to attorneys because they know the law

> Don't wait any longer.  Timing is vital with lenders.  Contact Secure Property Solutions to stop the foreclosure process and save your home.  Our experienced team will gather all of the necessary information to present your case to the lender's loss mitigation negotiator and work diligently to achieve a successful loan modification in a fast and efficient manner.  The sooner you take action, the better.

> If you would like to learn more about the Law Firm of Joseph A. Gembala, III &

Associates, click here. [opens gembala-law_com/ in a new window]

*Secure Property Solutions does not outsource clients to third parties.*

31.   This is false and fraudulent in at least the following ways: the true relationship between Mr. Gembala and SPS is not contractual but as a fraudulent alter ego; Mr. Gembala controls, directs, and participates in the affairs of SPS through a pattern of racketeering activities (mail fraud, wire fraud, money laundering) to cheat and defraud consumers, not help them; Mr. Gembala and SPS have not "helped countless homeowners" with "loan modification" but instead have defrauded countless homeowners without obtaining loan modification and left them worse off than before; no homeowner is a candidate for mortgage modification through Defendants, because no Defendant has any capability or desire to modify loans; no loan modification has ever been or will ever be "granted" through Defendants' efforts; Defendants have lowered no one's payment; Defendants have not gotten anyone's past due payments forgiven; Defendants have not lowered anyone's interest rate; Defendants have lowered no one's principal balance; Defendants never stop foreclosure processes; Defendants, including Mr. Gembala himself, are not any better at obtaining mortgage modification than anyone else charging an advance fee for so doing; Defendants refer to "attorneys" but only have one attorney, Mr. Gembala, and he does not help individual consumers; Defendants employ or contract with no experienced negotiators, or at best, their only "experience" is to make a few perfunctory calls to lenders, without any effect on loan terms or balances; knowledge of TILA and RESPA does not help consumers if lenders have not violated either statute; banks do not listen to attorneys just because attorneys know the law; Defendants' "team" does not work to get consumers' mortgages modified, whether "in a

fast or efficient manner" or otherwise; and SPS contradicts this page's claim that it "does not outsource clients to third parties" by claiming on other pages to do exactly that.

32.    securepropertysolutionsllc_com/nonconventionalprograms_html, SPS's "Second Chance Program" page, reads:

> Our Second Chance Program is ideal for homeowners who need to access their equity but are unable to do so through traditional financing.
>
> **Benefits:**
>
> • Cash out
> • Credit Repair
> • Debt Consolidation\Elimination
> • Bankruptcy Buyout (if applicable)
> • Reduce Monthly Payment\Expenses
>
> Secure Property Solutions will only offer this program to someone when it makes sense and our client is receiving a benefit from this program.  When this program is applied properly it can be a very strong tool in helping a homeowner stop the foreclosure, save their house, get back on the path to success and remain on path for a long term.

33.    This is false and fraudulent in at least the following ways: Defendants do not explain what their "Second Chance Program" is, and it is unlikely to exist at all; at best, "access their equity but are unable to do so through traditional financing" implies an ability to obtain second mortgages for people with bad credit or difficulty paying bills, which Defendants cannot do; Defendants cannot repair credit by this or any other means, and violate the Credit Repair Organizations Act by so claiming; Defendants further violate CROA by charging advance fees; Defendants cannot reduce monthly payments or expenses but instead defraud consumers of money that could have gone to paying expenses; and Defendants have no programs or tools to stop foreclosure, save houses, or get consumers on the "path to success," whatever that is.

34.    securepropertysolutionsllc_com/fhastreamline_html, SPS's "FHA Streamline"

page, reads:

Secure Property Solutions has become the industry leader in helping homeowners with their mortgage during the coming economic recession. Until now our focus has been on helping homeowners who are behind on their payments and\or are in foreclosure.

We have decided to take a proactive approach to help homeowners prevent this from happening by taking advantage of the government's FHA STREAMLINE PROGRAM. If you currently have a FHA mortgage with an interest rate of 6.5 or higher this is a great opportunity to significantly lower your mortgage payment by improving the rate and term of your loan.

• No out of pocket expense
• Average rate reduction of 2.5%
• In house underwriting
• Bank driven interest rates

This is a fast and convenient loan to qualify for as there is limited underwriting and documentation needed.

**GUIDELINES**

• The mortgage to be refinanced must already be FHA insured
• The mortgage to be refinanced should be current
• The refinance must lower the principal and interest payment of the previous payment
• No cash out
• Any subordinate financing may remain in place as long as it is subordinate on title
• No appraisal is needed
• No termite report is required
• The borrower cannot be late, delinquent, or in default or any federal debt

**DOCUMENT CHECKLIST**

• Copy of the note and mortgage
• Copy of the homeowners policy
• Copy of the mortgage statement from the current mortgage company
• Copy of the previous title policy
• Copy of the drivers license
• Copy of the social security cards

**Call today and begin to save your hard earned money!**

35. This is false and fraudulent in at least the following ways: neither SPS nor any

other Defendant is an approved HUD or FHA lender and cannot possibly obtain such a mortgage for anyone; neither SPS nor any Defendant is any kind of "industry leader" in any legitimate industry, and that this claim is not mere sales puffery but is utterly and knowingly false and meant to mislead consumers; no Defendant in any way helps, much less is focused on helping, homeowners in trouble, but instead, Defendants seek to defraud such homeowners and wrongfully take the last of their money; neither SPS nor any other Defendant can possibly have taken "a proactive approach" to FHA Streamline mortgages because no Defendant is an approved lender; no Defendant can or will reduce interest rates by 2.5% or any other amount; the lists of conditions, requirements, and documents are intentionally misleading because no Defendant is an approved lender and cannot provide an FHA Streamline mortgage regardless of how many documents anyone provides; and whoever calls today or any other day will not "begin to save [thei]r hard earned money!" but will be defrauded of said hard earned money by Defendants.

36. securepropertysolutionsllc_com/branchlocations_html lists a number of "branch offices," none of which is a branch office as the term is normally understood, that is, where corporate employees and managers normally work, and can meet with customers to assist them with mortgage relief.

37. 12232 NW 75th Place, Parkland FL 33076 is a single family residence that sold on 03 June 2006 for $882,000, not a suitable branch office.

38. 992 Kilburn Street, St. Paul MN 55117 is a single family residence, three-bedroom one-bath, 1,179 square feet, not a suitable branch office.

39. 117 Lancaster Road, Freehold NJ 07728 is a single family residence, 1,734 square feet, not a suitable branch office.

40. 191 Broadway, Dobbs Ferry NY 10522 is actually the address of Drain-It, Inc., a plumbing contractor.

41. While 75 Sunset Road, Willingboro NJ 08046 is actually a four-unit commercial property (the other three are a beauty salon, convenience store, and Domino's Pizza), this "branch office" has the same address, and the same 888 489 2688 fax number, as uspremierdebtsolvers_com/, which shows every sign of being just another fraudulent "debt relief" outfit that takes peoples' money and then does nothing for them.

42. customassetsolutions_com/contact_html lists 75 Sunset Road, Willingboro NJ 08046 as the sales and marketing office for Custom Asset Solutions, LLC.

43. Alternate SPS site securepropertysolutionsllc_net/ and other Defendant sites feature an ABC News story about the runaround that homeowners often get from lenders, and includes a segment wherein Congresswoman Maxine Waters telephones a major bank trying to find out about mortgage modification, but is put on hold for unreasonable lengths of time and is only allowed to talk to personnel who have no real power to help.

44. This is false and misleading because Congresswoman Waters' image is invoked to make Plaintiffs think that Defendants are pro-consumer, and also falsely implies that Defendants can achieve results that a member of Congress cannot.

45. customassetsolutions_com/payments100_html reads in pertinent part:

FEE AGREEMENT FOR CASE WORK TO JOSEPH A. GEMBALA III

INFORMATION AS IT APPREARS ON CHECK
Name (Last, First Middle Initial):__
Address: _
City: __                State: _        Zip_
Phone: _
Financial Institution Name (Bank, Savings, Credit Union, etc.):_
Routing Number (Must be 9 numbers):__           Account Number: _
1st Payment: _   Date: _        2nd payment: _   Date: _   3rd   payment:    _

Date:_
4th Payment:_    Date: _             5th payment: _    Date: _    6th    payment:    _
Date: _
ALL PAYMENTS ARE MADE PAYABLE TO:JOSEPH A GEMBALA, III, &
ASSOCIATES
JOSEPH A GEMBALA, III, & ASSOCIATES DOES NOT ADVISE YOU TO
STOP PAYING YOUR MORTGAGE
Please Note: Loan Modifications are a 60 to 120 day process.
PLEASE NOTE ALL PAYMENT PLANS ARE FINAL. ANY RETURNED
CHECKS WILL VOID YOUR CONTRACT AND COMPLETE PAYMENT USING
CERTIFIED FUNDS WILL ONLY REINSTATE YOUR MODIFICATION

100% Money Back Guarantee

In the unlikely event  that your case has been pre-qualified, you have authorized
payment, we have received all of  your documents as requested, and our attorney is
unable to negotiate a Loan Modification, you will receive a 100% refund.
When we say 100%, we mean 100%. Unlike most service providers, we withhold
nothing. No processing fee, no administration fee, no intake fee, no initiation fee, no
new client fee. If we cannot successfully negotiate a mortgage loan modification, you
get it all back—even though we have invested our time and our money into your case.
That's how confident we are.
If a client calls to cancel after prequalification and they have authorized payment,
client will be reimbursed total amount paid less $795.00
JOSEPH A GEMBALA, III, & ASSOCIATES DOES NOT ADVISE YOU TO
STOP PAYING YOUR MORTGAGE
Please Note: Loan Modifications are a 90 to 120 day process.

I/We _                          , agree to pay Joseph A. Gembala, III & Associates
the amount of $           for Loss Mitigation Services.  Payments are accepted are
Personal Check, Cashier's Check or Visa, Master Card, Discover and American
Express.
The undersigned further acknowledges that the additional terms of this transaction
shall be subject to client's Work Agreement on file, if no current Work Agreement on
file, then the undersigned agrees that the compensation is determined by Joseph A.
Gembala, III & Associates discretion.  Furthermore, the undersigned agrees that there
is no refund of this transaction through a charge back process.  Undersigned
acknowledges that the loss mitigation work may not be processed without a signature
and printed name.  If the undersigned chooses to fax this sheet, the undersigned
agrees that their faxed signature constitutes, and is as good as, their original signature.
By my signature, I authorize Joseph Gembala, III, & Associates to process payments
on my account using the above information.
I hereby authorize Joseph Gembala, III, & Associates to deduct $           (Total) on
the above dates.
Date (Month, Day, and Year):              Signature By Typing Name:

46. This is false and fraudulent in at least the following ways: Defendants' "mortgage modification" is not a 90 to 120-day process, but is altogether nonexistent and never happens at all, and Defendants will not refund any money, much less "100% withholding nothing", regardless of the inevitable failure of their alleged "mortgage modification," and shows that Defendants' ultimate goal is to put money in Mr. Gembala's pocket.

47. nationalmtgconsultants_com/ sells purported mortgage modification, credit repair, and "forensic loan audits" (whatever those are).

48. nationalmtgconsultants_com/downloads/Authorization_Form_pdf          reveals "National Mortgage Consultants" to be just another front for JAGA.

**Other Current and Former Marketing Sites**

49. securepropertieshollywood_com/index_html is identical in format to SPS's and includes Mr. Gembala's photograph and mini-bio.

50. transworldmanagementgroup_com/ is an identical site to SPS's, except that there is no immediate mention of Mr. Gembala or JAGA.

51. transworldprocessing_com/contact_us_htm is differently formatted, and headed "Law Offices of Joseph A. Gembala III and Associates."

52. transworldprocessing_com/Law-Offices-of-Joseph-A-Gambella-Ltr_pdf          is a "Loan Modification Agreement" between "Law Offices of Joseph A. Gembala, III & Associates [attorney] and the client(s) named above to assist the client in conducting a bank approved loan modification for the above referenced property."

53. hope4yourhome_com/index2b_htm is formatted similarly to Transworld Processing, and both are run by Martin Rothenberg.

54. However, as of about 12 January 2010, Hope4YourHome, Transworld, and

Secure Properties Hollywood disclaim any current association with Defendants.

55. Each of the aforementioned sites communicates writings, signs, signals, and/or sounds for the purpose of promoting Defendants' scheme or artifice to cheat Plaintiffs of money by promising to reduce monthly payments, reduce principal, reduce interest, or otherwise favorably modify Plaintiffs' mortgages in return for an advance fee.

56. With each site, Defendants commit a separate continuing offense of wire fraud, 18 U.S.C. § 1343.

57. Each of these sites is an advertisement of a New Jersey entity, and/or of a natural person residing in or operating from New Jersey, that makes false and misleading written statements addressed to the public or to the substantial segment of the public that needs or wants mortgage and foreclosure relief for the purpose of promoting the purchase or sale of services and for the purpose of obtaining property.

58. With each site, Defendants commit a separate continuing offense of deceptive business practices, NJS 2C:21-7(e) and (h).

59. On or about 12 January 2010, the securepropertysolutionsllc_com site went offline, perhaps temporarily, but Defendants have plenty of other sites, including the alternate and nearly identical securepropertysolutionsllc_net.

60. These sites and connections are not exhaustive, but are a representative sample of the means by which Defendants ensnare and defraud Plaintiffs, and are entirely consistent with innumerable other "debt elimination," "credit repair," "mortgage modification," and "foreclosure rescue" scams operating today.

**Named Plaintiffs' Dealings with Defendants**

61. Named Plaintiffs Michael and Dorothy Manuel, husband and wife, jointly owe a

mortgage on their marital residence to Vanderbilt Mortgage & Finance, Inc.

62. Named Plaintiffs are current on this mortgage but in or around May 2009 began to experience financial difficulty, to the point that they were not sure of being able to keep their mortgage current.

63. Named Plaintiffs tried on their own to convince Vanderbilt to reduce their required monthly mortgage payments, or even to change their payments to biweekly instead of monthly, but Vanderbilt refused.

64. Named Plaintiffs searched online for a debt consolidation company and came across the website of Secure Property Solutions, LLC on or about 14 June 2009.

65. On or about 17 June 2009, Mrs. Manuel filled out a questionnaire on the SPS site, giving her contact information and requesting a contact.

66. That same day, Scott, an employee or agent of Defendants whose last name is unknown, telephoned Named Plaintiffs from New Jersey to North Carolina.

67. Mrs. Manuel told Scott that they had tried to get Vanderbilt to reduce their payments, but had been unsuccessful.

68. Scott told Mrs. Manuel that even though Named Plaintiffs had not been able to arrange their own loan modification, if Named Plaintiffs paid $895.00 in advance, Scott could within 30 to 60 days "save you $300" or "reduce your payment $300" or reduce their mortgage payment from $909 to $609, or words to that effect.

69. In fact, Scott knew that no Defendant could do that, but said so anyway in order to convince Named Plaintiffs to give money to Defendants.

70. Defendants thus completed a separate offense of wire fraud, 18 U.S.C § 1343.

71. Defendants thus completed a separate offense of obtaining property by false

pretenses, a Class H felony per NCGS § 14-100.

72. Defendants thus completed a separate offense of debt adjusting, a Class 2 misdemeanor per NCGS § 14-424.

73. Defendants thus completed a separate offense of deceptive business practices, NJS 2C:21-7(e) and (h).

74. Named Plaintiffs reasonably relied on Scott's representations and gave Scott their debit card information over the telephone.

75. On or about 18 June 2009, the Law Office of Joseph A. Gembala III of Barrington NJ debited Named Plaintiffs' State Employees Credit Union account for $895.00.

76. This money traveled across state lines by the interstate wires and thereby affected interstate commerce.

77. Defendants thus completed an offense of promotion money laundering, concealing or disguising the nature, location, ownership, or control of the proceeds of mail and wire fraud, and conspiracy to launder money, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i), and (h).

78. One or more Defendants dispatched from "Secure Property Solutions, LLC 208 White Horse Pike Suite 12 Barrington NJ 08007" to Named Plaintiffs in North Carolina a package by FedEx Standard Overnight delivery, tracking number 0201 7976 9451 0350, containing documents in furtherance of their scheme.

79. One document in this package was a purported certificate from the Better Business Bureau of New Jersey pronouncing Secure Property Solutions, LLC to be "an accredited business of the Better Business Bureau through July 2009"

80. This certification, if it ever existed, had expired at the time Defendants sent it to

Named Plaintiffs, and was meant to inspire false confidence in Named Plaintiffs.

81.    The purported certificate also claimed that SPS "is committed to maintaining ethical business practices in advertising, selling and consumer relations."

82.    This was a knowingly false statement because Defendants knew that SPS was and is committed to defrauding innocent consumers of money in return for no value.

83.    Another document in the FedEx package was a "Check by Phone or Credit Card" authorization form headed "JOSEPH A. GEMBALA, III, & ASSOCIATES" "Secure Property Solutions, LLC/ The Solution to All of Your Real Estate, Mortgage and Investment Needs" at "208 White Horse Pike, Suite 12, Barrington NJ 08007" and containing the following statements: "By my signature, I authorize Joseph A. Gembala, III, & Associates to process payments on my account using the above information."; "ALL PAYMENTS ARE MADE PAYABLE TO: JOSEPH A. GEMBALA, III, & ASSOCIATES"; and "Please Note: Loan Modifications are a 90 to 120 day process."

84.    That last statement was knowingly false because Defendants knew that their alleged loan modifications are not a 90 to 120 day process, but never happen at all, and this statement was intended to lull Named Plaintiffs into unwarranted patience and thus keep Named Plaintiffs from demanding refunds or contacting a lawyer.

85.    The documents in the FedEx package were all in furtherance of Defendants' scheme, and completed a separate offense of mail fraud, 18 U.S.C. § 1341.

86.    On or about 06 July 2009, Kevin Malone, an agent or employee of Defendants, telephoned Named Plaintiffs from outside North Carolina and told Named Plaintiffs that he would be contacting Vanderbilt on behalf of Named Plaintiffs.

87.    Named Plaintiffs filled out Defendants' forms (headed "Joseph A. Gembala, III,

& Associates" and "Secure Property Solutions, LLC") such as income and expense statements and returned them to Defendants at Defendants' request by U.S. Mail on or about 28 July 2009, even though Defendants knew that these documents would not help Named Plaintiffs at all.

88. Defendants thus completed a separate offense of mail fraud, 18 U.S.C. § 1341.

89. One or more Defendants telephoned across state lines to talk to Named Plaintiffs' mortgagee, Vanderbilt, concerning Named Plaintiffs' mortgage.

90. Vanderbilt telephoned Named Plaintiffs to say that it did not modify its mortgages, and that Defendants' efforts would be of no use.

91. Vanderbilt now includes a notice on its monthly bills to customers that it does not participate in loan modification programs and warns customers not to give money to people who promise to be able to modify mortgages.

92. Defendants' activities had no effect on Named Plaintiffs' mortgage principal or interest and did not lower their payment.

93. Kevin Malone told Named Plaintiffs, in response to their inquiries, that the modification was taking so long because Defendants had hundreds, if not thousands, of applications every month, and such things would take time.

94. In early October 2009, Scott telephoned Named Plaintiffs from outside North Carolina to say that he would be issuing a refund, but it would be slightly delayed by the upcoming Columbus Day holiday.

95. Scott in fact knew that no refund would be forthcoming, but falsely stated otherwise to reassure Named Plaintiffs and keep them from taking action.

96. This statement completed a separate offense of wire fraud, 18 U.S.C. § 1343.

**97.** No Defendant ever refunded any of Named Plaintiffs' money.

**98.** Named Plaintiffs repeatedly demanded a refund, so Scott telephoned from outside North Carolina to promise a check for the full amount soon after 11 November 2009.

**99.** Scott in fact knew that no refund would be forthcoming, but falsely stated otherwise to reassure Named Plaintiffs and keep them from taking action.

**100.** This statement completed a separate offense of wire fraud, 18 U.S.C. § 1343.

**101.** The check never arrived.

**102.** In late November 2009, Named Plaintiffs notified Defendants that they had retained Counsel and would be filing suit unless Defendants refunded their money.

**103.** No Defendant ever contacted them again.

**104.** No Defendant has refunded any of Named Plaintiffs' money.

### As To The Class of Plaintiffs

**105.** In the same or similar way that they did to Named Plaintiffs, Defendants have conspired to commit acts of mail fraud, wire fraud, money laundering, and (since SPS is organized and domiciled in New Jersey and JAGA has an office there) New Jersey deceptive business practices against at least 200 Plaintiffs (recall Kevin Malone's statement to Named Plaintiffs that Defendants had hundreds if not thousands of new applications every month) nationwide since at least July 2007 with no end in sight.

**106.** The same actions in the preceding paragraph constitute *malum in se* criminal offenses, codified as criminal fraud, deceptive practices, or false pretenses in Plaintiffs' respective home states, e.g., obtaining property by false pretenses, NCGS § 14-100.

**107.** Defendants have therefore completed at least one count of mail fraud (by sending documents in furtherance of their scheme through the U.S. Mail or private interstate

delivery services), two counts of wire fraud (each Plaintiff viewed at least one of Defendants' websites at least once and participated in at least one interstate phone call to or from Defendants), at least one count of money laundering (by receiving across state lines the proceeds of a completed offense of mail fraud, wire fraud, or state criminal fraud from each Plaintiff), and state criminal fraud.

108. By doing the math in the preceding paragraph, Mr. Gembala has participated in and managed the RICO Enterprises to complete at least 200 counts of 18 U.S.C. § 1341 mail fraud, 400 counts of 18 U.S.C. § 1343 wire fraud, 200 counts of 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i), and (h) money laundering, and 200 counts of state criminal fraud in furtherance of their scheme to cheat Plaintiffs of money.

109. Defendants have charged each Plaintiff at least $895.00, and Mr. Gembala used the RICO Enterprises (particularly JAGA) to receive, and did receive (particularly through JAGA), said proceeds after and as the product of completed offenses of mail and wire fraud, so Mr. Gembala received a total of at least $179,000 that they knew was the proceeds of specified criminal activity, completing numerous counts of 18 U.S.C. § 1957(a) engaging in monetary transactions in property of a value greater than $10,000 that was derived from specified unlawful activity.

110. Mr. Gembala has reinvested a substantial amount of this laundered money, which rightfully belongs to Plaintiffs, in the RICO Enterprises to maintain control and ownership of them, to pay their employees and agents, and to promote and carry on his specified unlawful activities of mail and wire fraud and money laundering.

111. Since at least July 2007, Mr. Gembala has perpetuated his pattern of racketeering activity by similar means (deceptive websites falsely promising mortgage relief and

foreclosure rescue in exchange for advance payment, which advance payments Defendants then laundered) against similar victims (innocent desperate consumers, typified by Named Plaintiffs, who were and are inclined to listen to anyone who seems to offer relief, and to give up virtually the last of their money to get such relief).

112. Defendants are advertising and offering services for sale to all Plaintiffs from Mr. Gembala's offices in Philadelphia, and a substantial portion of the money that Defendants receive goes to Mr. Gembala in Philadelphia and thereby directly or indirectly affect the people of the Commonwealth of Pennsylvania (especially those Plaintiffs who are Pennsylvania residents) per 73 P.S. § 201-2(3), and said services are not sold as advertised, in violation of 73 P.S. § 201-2(4)(ix) and (xxi), thereby violating the Pennsylvania Unfair Trade Practices and Consumer Protection Law as to all Plaintiffs.

## PRAYER FOR RELIEF

113. COUNT I: CONSTRUCTIVE TRUST—The facts as pleaded above show that Defendants received Plaintiffs' property by means of Defendants' defrauding it from Plaintiffs, or received Plaintiffs' property from other Defendants and did not return it to Plaintiffs, unjustly enriching Defendants and entitling Plaintiffs to an order appointing Defendants constructive trustees of all property received from Plaintiffs, together with an order for Defendants to transfer said property to Plaintiffs, the beneficiaries of said trusts.

114. COUNT II: UNJUST ENRICHMENT—The facts as pleaded above show that Defendants' sole source of income (other than what Mr. Gembala and JAGA earn from the legitimate practice of law) was to defraud Plaintiffs of their property, thus unjustly enriching Defendants and entitling Plaintiffs to damages in that amount jointly and severally from all Defendants.

115. COUNT III: CONVERSION—The facts as pleaded above show that Defendants wrongfully deprived Plaintiffs of their property by means of mail and wire fraud and false pretenses, or by receiving it from other Defendants who so obtained it from Plaintiffs, and then willfully continued to wrongfully deprive Plaintiffs of their property by means including but not limited to willfully keeping Plaintiffs' property for their own use instead of giving it back to Plaintiffs, entitling Plaintiffs to actual damages plus the maximum punitive damages allowed by law.

116. COUNT IV: NORTH CAROLINA RACKETEER AND CORRUPT ORGANIZATIONS ACT—The facts as pleaded above show that Mr. Gembala unlawfully conducted the affairs of the RICO Enterprises as to North Carolina resident Plaintiffs through an unlawful pattern of racketeering activity per NCGS § 75D-3(c)(1)b, (c)(1)c, and (c)(2) that continues with no end in sight, to wit, two counts of mail fraud in violation of 18 U.S.C. § 1341, at least four counts of wire fraud in violation of 18 U.S.C. § 1343, an offense of obtaining property by false pretenses in violation of NCGS § 14-100, an act in violation of NCGS § 75D-3(c)(1)c and 18 U.S.C. §§ 1956 and/or 1957 of affecting interstate commerce by laundering money that Defendants criminally derived from Plaintiffs by means of specified unlawful activity, and an offense of debt adjusting per NCGS § 14-424, and Mr. Gembala used the RICO Enterprises to keep Plaintiffs' property away from Plaintiffs and to perpetuate Defendants' pattern of racketeering activity, and thereby actually and proximately caused actual economic loss to Plaintiffs in the amount of at least $895.00 each, thus violating NCGS § 75D-4 and entitling all North Carolina resident Plaintiffs to triple damages, cumulatively per NCGS § 75D-10 with any other theory of relief including additional triple damages under federal RICO, together

with a reasonable attorney's fee and the costs of the action, jointly and severally from all Defendants, per NCGS § 75D-8.

117. COUNT V: NEW JERSEY RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT—The facts as pleaded above show that Mr. Gembala used the RICO Enterprises that operated from New Jersey, or used New Jersey entities and addresses, and thereby unlawfully conducted the affairs of the RICO Enterprises through a pattern of racketeering activity per NJS 2C:41-1(d) that has continued since at least July 2007 with no end in sight, to wit, use of the RICO Enterprises to complete at least 200 counts of mail and wire fraud per 18 U.S.C. §§ 1341 and 1343 and at least 200 counts of 18 U.S.C. §§ 1956 and/or 1957 affecting interstate commerce by laundering money that Defendants criminally derived from Plaintiffs by means of specified unlawful activity including mail and wire fraud per 18 U.S.C. §§ 1341 and 1343, and at least 200 counts of deceptive business practices per NJS § 2C:21-7(e) and (h), and used the RICO Enterprises to keep Plaintiffs' property away from Plaintiffs and perpetuate Defendants' pattern of racketeering activity, and thereby actually and proximately caused actual economic loss to Plaintiffs in the amount of at least $895.00 each, all in violation of NJS § 2C:41-2(a), (b), and (c), and entitling Plaintiffs to recovery of threefold any such damages sustained and the cost of the suit, including a reasonable attorney's fee, costs of investigation, and costs of litigation, from Mr. Gembala per NJS § 2C:41-4(c).

118. COUNT VI: RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT—The facts as pleaded above show that Mr. Gembala unlawfully conducted the affairs of the RICO Enterprises through a pattern of racketeering activity that has continued since no later than July 2007 with no end in sight,

including but not limited to use of the RICO Enterprises to commit to at least 200 counts of mail and wire fraud per 18 U.S.C. §§ 1341 and 1343, and at least 200 counts of 18 U.S.C. §§ 1956 and/or 1957 affecting interstate commerce by laundering money that Defendants criminally derived from Plaintiffs by means of specified unlawful activity including mail and wire fraud per 18 U.S.C. §§ 1341 and 1343, and at least 200 counts of deceptive business practices per NJS § 2C:21-7(e) and (h), and used the RICO Enterprises to keep Plaintiffs' property away from Plaintiffs and perpetuate Defendants' pattern of racketeering activity, and thereby actually and proximately caused actual economic loss to Plaintiffs in the amount of at least $895.00 each, all in violation of 18 U.S.C. § 1962(a), (b), and (c) and entitling Plaintiffs to triple damages together with a reasonable attorney's fee and the costs of the action, cumulative to all other damages under all other causes of action, from Mr. Gembala per 18 U.S.C. § 1964(c).

119. COUNT VII: RESPONDEAT SUPERIOR—The facts as pleaded above show that Mr. Gembala's Entity Defendants and their employees and agents were acting on behalf of Entity Defendants in the course of their employment, and therefore acting ultimately on behalf Mr. Gembala for his personal benefit and profit, rendering Entity Defendants and Mr. Gembala liable or vicariously liable for all torts and wrongs that their employees and agents committed against Plaintiffs.

120. COUNT VIII: PIERCING THE CORPORATE/LLC VEIL—The facts as pleaded above show that Mr. Gembala used Entity Defendants as a shield for illegal activity (mail fraud, wire fraud, money laundering, deceptive business practices) and intentionally tortious conduct in violation of the declared public policy of the United States and of the several States, and also that Mr. Gembala used Entity Defendants to carry out his scheme

and inequitably prevent Plaintiffs from recovering their own property, and also failed to observe corporate formalities and excessively fragmented his enterprises not for any legitimate business need but for the purpose of evading responsibility for his wrongful acts, rendering Mr. Gembala personally liable for all acts of Entity Defendants.

121.   COUNT IX: NEGLIGENCE—The facts as pleaded above show that Defendant Joseph A. Gembala III had a duty to exercise reasonable care in hiring and supervision of his employees, agents, and contractors so that they would obey all applicable laws and respect the rights and property of others; but instead, Mr. Gembala negligently hired and supervised his employees, agents, contractors, and associates, to wit, negligently hired persons without requisite education, training, knowledge, or experience in debt management and loan modification, and then negligently allowed them in the course of their employment to commit crimes upon Plaintiffs and defraud Plaintiffs of money from which he ultimately benefited, proximately causing damage to Plaintiffs and entitling all Plaintiffs to actual damages, together with punitive damages to the extent that Mr. Gembala's negligence was willful or wanton.

122.   COUNT X: UNFAIR AND DECEPTIVE TRADE PRACTICES—The facts as pleaded above show that Defendants (including those of a learned profession, because no professional Defendant was providing lawful and legitimate services to clients) are liable to Plaintiffs for actual damages, including but not limited to the money they paid to Defendants, and entitled to trebling of said actual damages on grounds including but not limited to that Defendants misused Mr. Gembala's attorney credentials to gain trust, and that Defendants flagrantly misrepresented their services and committed the crimes of mail and wire fraud upon Plaintiffs and then laundered Plaintiffs' money, together with a

reasonable attorney's fee and costs of bringing the action, per 73 P.S. § 201-9.2 for all Plaintiffs and NCGS §§ 75-16 and −16.1 for all North Carolina resident Plaintiffs.

123. COUNT XI: FRAUD—The facts as pleaded above show that Defendants materially misrepresented relevant facts and law to Named Plaintiffs, intending for each Named Plaintiff to rely on same, and each Named Plaintiff did reasonably rely on same, actually and proximately causing them damage, entitling each Named Plaintiff to actual damages, including but not limited to the money paid over, plus punitive damages sufficient to punish Defendants' wrongdoing and to deter others from similar conduct.

**WHEREFORE**, Plaintiffs pray judgment against Defendants for damages as pleaded above, plus such maximum punitive damages as are consistent with NCGS Chapter 1D, the common law, and constitutional due process, together with the costs of the action and a reasonable attorney fee, plus other and further relief as this Court finds lawful and just, including appointment of operating receivers for Mr. Gembala and Joseph A. Gembala, III, & Associates, and liquidation receivers for all other Defendants.

TRIAL BY JURY IS HEREBY DEMANDED OF ALL ISSUES SO TRIABLE.

Respectfully submitted this **14 January 2010**,

> /s/Christopher W. Livingston
> Christopher W. Livingston
> Counsel for Plaintiffs
> 2154 Dowd Dairy Road
> White Oak NC 28399
> Land line and fax 910 866 4948
> Cell 910 876 7001
> chrisatty@hotmail.com
> NC State Bar  No. 27282
> LR 83.1 Counsel