IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:10-CV-4-FL

| | | |
|---|---|---|
| MICHAEL AND DOROTHY MANUEL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| JOSEPH A. GEMBALA, III, ESQ, et al. | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on plaintiffs' motion to certify a class (DE #27), plaintiffs'

motion to appoint a receiver for all defendants (DE #9) and the motion to dismiss and motion to

strike (DE #13) filed by defendants Joseph A. Gembala, III, Esq. ("defendant Gembala") and Joseph

A. Gembala III & Associates ("defendant JAGA") (together, "the Gembala defendants").  Also

before the court is the matter of two defendants, Secure Property Solutions, LLC ("defendant SPS")

and National Mortgage Consultants Group, LLC  ("defendant NMCG"), as to whom plaintiffs were

directed to file proof of service and as to whom plaintiffs failed to so file.  The time within which

to respond to all of these matters has expired.  In this posture, these matters are ripe for review.  For

the reasons that follow, this court DENIES plaintiffs' motion to certify a class, DENIES plaintiffs'

motion to appoint a receiver for all defendants, GRANTS the Gembala defendants' motion to

dismiss, and DENIES AS MOOT the Gembala defendants' motion to strike.  Further, defendant SPS

and defendant NMCG are DISMISSED from this case.

## STATEMENT OF THE CASE

Named plaintiffs Michael and Dorothy Manuel ("plaintiffs") filed their original complaint

in the Eastern District of North Carolina on January 14, 2010.  The original complaint contained

eleven counts and named as defendants the Gembala defendants, defendant SPS, defendant NMCG, and Custom Asset Solutions, LLC ("defendant CAS"). On February 8, 2010, plaintiffs filed their amended complaint, which added two additional counts, thirteen additional pages, and two additional defendants: Michael Malone ("defendant Malone") and Christopher Frisch ("defendant Frisch"). Count VI of the amended complaint alleges a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* The remaining counts recite various state law claims. Plaintiffs invoke federal jurisdiction on the grounds of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), federal question jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C § 1367.

On February 22, 2010, plaintiffs filed a motion to appoint a receiver for all defendants. On February 26, 2010, the Gembala defendants filed an objection to plaintiffs' motion to appoint a receiver. Plaintiffs filed a reply on March 14, 2010. No other defendants responded within the time allowed for doing so.

On February 26, 2010, the Gembala defendants filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), along with a motion to strike under Rule 12(f). On March 14, 2010, plaintiffs filed a memorandum in opposition to the Gembala defendants' motion to dismiss and motion to strike.

On March 26, 2010, defendant Malone filed a motion for extension of time to file an answer to plaintiffs' amended complaint. In an order dated April 21, 2010, the clerk of court granted the motion and extended the time for defendant Malone to file an answer to May 20, 2010.

On April 13, 2010, plaintiffs filed a motion to certify a class pursuant to Federal Rule of Civil Procedure 23. On May 4, 2010, the Gembala defendants filed a response in opposition to

plaintiffs' motion to certify a class. No other defendants responded to plaintiffs' motion within the time allowed for doing so. Plaintiffs filed a reply to defendants' response on May 21, 2010.

This court entered its initial order on July 2, 2010, and directed plaintiffs to file proof of service as to the defendants who had not yet filed responsive pleadings, which were all defendants except the Gembala defendants. Following entry of the order, plaintiffs filed proof of service as to defendant CAS, defendant Malone, and defendant Frisch. Plaintiffs then moved for entry of default as to those defendants, and default was entered as to those defendants on July 28, 2010.

On August 9, 2010, defendant Malone moved for leave to file an answer. Defendant Malone's motion was granted on September 14, 2010, and defendant Malone's answer was filed.

## STATEMENT OF FACTS

As a preliminary matter, this court observes that many of the alleged factual statements in the amended complaint amount to legal conclusions, elements of causes of action, or arguments which are not entitled to consideration under the Supreme Court's decision in Ashcroft v. Iqbal. 556 U.S. ___, 129 S. Ct. 1937 (2009). For example, the amended complaint recites the conclusive statement that "[a]ll Entity Defendants are RICO Enterprises." (Am. Compl. ¶ 26) The factual allegations distilled from the amended complaint are as follows.

Plaintiffs are husband and wife and are citizens of North Carolina. Plaintiffs seek, for themselves and for a proposed class of at least 1100 claimants, compensatory and punitive damages for injury they allege resulted from a "mortgage modification" scam operated by the defendants.

Defendant SPS is a limited liability company organized under New Jersey law. Defendant Malone serves as the company's registered agent, and defendant Frisch is its general partner. Plaintiffs allege that defendant SPS was organized for the purpose of operating a "mortgage

modification" scam, which involved accepting advance payments from homeowners in return for negotiating mortgage modifications on behalf of those homeowners.

Defendant Gembala is a lawyer admitted to practice law in Pennsylvania. Defendant JAGA, a Pennsylvania sole proprietorship or general partnership, is his law firm. Plaintiffs allege that a business arrangement was made whereby defendant JAGA received and processed all of these homeowners' payments on behalf of defendant SPS. Defendant Gembala kept a portion of these payments in return for managing the finances of defendant SPS. Defendant CAS is a limited liability company organized under New Jersey law, and for whom John Malone, father of defendant Malone, serves as officer and director. Defendant NMCG is also a limited liability company organized under New Jersey law. Plaintiffs allege that both defendant CAS and defendant NMCG are "alter egos or aliases" for defendant SPS, and further allege that defendant JAGA received and processed payments for these two entity defendants in the same way that defendant JAGA received and processed payments for defendant SPS. Plaintiffs do not, however, allege they ever had any contact with employees or agents of either defendant CAS or defendant NMCG.

Plaintiffs jointly owe a mortgage on their marital residence to Vanderbilt Mortgage & Finance, Inc. ("Vanderbilt"). Beginning in May 2009, plaintiffs began to experience financial difficulty and were concerned that they would not be able to stay current on their mortgage payments. Plaintiffs attempted to negotiate directly with Vanderbilt to reduce their monthly mortgage payments, but were unable to reach an agreement. Plaintiffs conducted an internet search for a debt consolidation company and discovered a website belonging to defendant SPS. Plaintiffs spoke with an employee of defendant SPS, who informed them that for an advance payment of $895.00, defendant SPS would arrange a mortgage modification with Vanderbilt to reduce plaintiffs'

4

monthly payment. Plaintiffs allege that this employee was actually aware that defendant SPS did not have the ability to arrange a mortgage modification.

Plaintiffs provided the defendant SPS employee with their debit card information, and the next day, their account was debited for $895.00 by "LAW OFFICE OF JOSEBARRINGTON." They allege that this entry refers to the law practice of defendant Gembala. From defendant SPS, plaintiffs received a package containing various documents which plaintiffs signed and returned as requested in late July, 2009.

Plaintiffs were notified by an employee of defendant SPS that he would be contacting Vanderbilt on plaintiffs' behalf. Soon thereafter, Vanderbilt informed plaintiffs that it did not modify mortgages, and accordingly would not be modifying plaintiffs' mortgage. An employee of defendant SPS contacted plaintiffs in October 2009 to inform them that he would be issuing a refund, although the refund would be delayed because of the Columbus Day holiday. Plaintiffs allege the employee made this statement despite knowing that defendant SPS did not plan to issue a refund. After the refund did not arrive, plaintiffs were assured again in November 2009 that a full refund would be issued shortly. After the refund still did not arrive, plaintiffs informed defendant SPS that they had retained counsel and planned to file a lawsuit unless they received a refund. Plaintiffs never received a refund, and instituted this action in January, 2010.

Plaintiffs make further assertions of fact regarding the defendants' contacts and dealings with other individuals who plaintiffs refer to as "the Class." It is difficult to summarize those facts as alleged, however, because the allegations are inconsistent throughout the amended complaint. For example, plaintiffs' counsel claims to have been contacted by "at least twelve" individuals who "lost money to defendants as named plaintiffs did" (Am. Compl. ¶ 13), but also alleges that "the Class"

contains over 1100 individuals (<u>Id.</u> ¶ 12).  Similarly, in one instance the complaint alleges that

defendants Malone and Frisch gained $100,000.00 in the operation (<u>Id.</u> ¶ 18-19), and in another

alleges that they gained over $500,000.00 (<u>Id.</u> ¶ 139).  The complaint separately alleges that, in total,

the operation garnered over $1,000,000.00 (<u>Id.</u> ¶ 160).

## ANALYSIS

A.    Plaintiffs' Failure to File Proof of Service as to Defendant SPS and Defendant NMCG

As a preliminary matter, the court observes that in the initial order entered July 2, 2010 (DE

#34), this court ordered plaintiffs to file affidavits or other proof of service as to each and every

defendant, or where service was outstanding, to show good cause for failure to serve.  Plaintiffs were

ordered to file such proof within fourteen (14) days of entry of the initial order.  Plaintiffs were

instructed that if they failed to respond within that time, the five defendants who had failed to file

a responsive pleading to the complaint would be dismissed from this action.  At the time of entry

of the initial order, the Gembala defendants had filed responsive pleadings.  However, defendant

SPS, defendant CAS, defendant NMCG, defendant Malone and defendant Frisch had not filed

responsive pleadings.  Within fourteen (14) days of entry of the initial order, plaintiffs filed

appropriate proof of service as to defendant CAS, defendant Malone, and defendant Frisch.

However, plaintiffs failed to file appropriate proof of service as to defendant SPS and defendant

NMCG.  Therefore, as plaintiffs have failed to file proof of service as ordered by the court,

defendant SPS and defendant NMCG are hereby DISMISSED from this action.

B.    Plaintiffs' Motion to Certify

In a motion filed April 13, 2010, plaintiffs moved to certify a class pursuant to Federal Rule

of Civil Procedure 23.  The Gembala defendants filed a response in opposition on May 4, 2010.

6

Plaintiffs filed a reply on May 21, 2010.  No other defendants filed a response within the time allotted for doing so.

Rule 23(a) provides the prerequisites for class certification. Under that rule, a member of a class may sue as a representative party on behalf of all class members only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Once the prerequisites of Rule 23(a) are satisfied, Rule 23(b) provides that a class action may only be maintained if the suit falls into one of three categories set forth in subsection (b).

Plaintiffs seeking to represent a class in a proposed class action bear the burden of establishing that the requirements of Rule 23(a) are met.  Gunnells v. Healthplan Services, Inc., 348 F.3d 417, 459 (4th Cir. 2003).  The failure to establish any one of these requirements is fatal to a motion for class certification. Haywood v. Barnes, 109 F.R.D. 568, 575 (E.D.N.C. 1986).  A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  General Telephone Co. Of Southwest v. Falcon, 457 U.S. 147, 161 (1982).  This rigorous analysis requires the district courts to conduct a close examination "not just of the plaintiffs' claims as pled, but of the evidence to support those claims in order to make an appropriate judgment on Rule 23 certification."  Brown v. Nucor Corp., 576 F.3d 149, 162 (4th Cir. 2009).  Indeed, "if it were appropriate for a court simply to accept the allegations of a complaint at face value in making class action findings, every complaint asserting the requirements of Rule 23(a) and (b) would automatically lead to a certification order."  Gariety

v. Grant Thornton, LLP, 368 F.3d 356, 364 (4th Cir. 2004) (holding that the district court failed to comply with the procedural requirements of Rule 23 by accepting the plaintiffs' allegations for purposes of certifying a class). Accordingly, this court must conduct a rigorous analysis to determine whether the prerequisites of Rule 23(a) have been satisfied.

The plaintiffs must first establish that the numerosity requirement of Rule 23(a)(1) is satisfied. Under Rule 23(a)(1), a class action is appropriate only if "the class is so numerous that joinder of all members is impracticable." There is no set formula for determining what number of class members satisfies the numerosity requirement. General Telephone Company of the Northwest, Inc. v. Equal Employment Opportunity Commission, 446 U.S. 318, 330 (1980). However, in the Fourth Circuit, groups of fifty-seven (57) and ninety-four (94) individuals have been held to satisfy the numerosity requirement. Rodger v. Electronic Data Sys. Corp., 160 F.R.D. 532, 535 (E.D.N.C. 1995); Brown, 576 F.3d at152.

In support of their argument that the numerosity requirement is satisfied, plaintiffs offer two exhibits. First, exhibit 10 contains affidavits from twelve (12) potential class members, including plaintiffs themselves. Additionally, exhibit 11 offers dozens of pages of informal "blog" postings written by more alleged potential class members on a debt relief website. Taken together, plaintiffs argue these exhibits establish a class of at least forty-one (41) individuals. Without reference to any additional evidence, plaintiffs further assert that the proposed class includes over 1100 potential class members. (Motion to certify, p. 1)

After conducting a rigorous analysis of plaintiffs' claims and the evidence in support of those claims, this court has determined that plaintiffs have not satisfied the numerosity requirement of Rule 23(a)(1). Upon reviewing the affidavits submitted in exhibit 10, the court is satisfied that the

prospective class members total at least twelve (12). The plaintiffs have not, however, carried the burden to establish that the number of prospective class members is any greater. Although plaintiffs' counsel claims throughout his memorandum in support to have been contacted by wildly varying numbers of potential class members, ranging from forty-one (41) to sixty (60) to 1100, counsel has not presented any evidence that those individuals would seek to participate in the proposed class action or that those individuals even exist. Counsel baldly asserts that the class will total at least 1100 members, "and even that might be a lowball figure" (Plaintiffs' memorandum in support, p. 15), but offers no evidence to support this claim. Further, this court does not find reliable counsel's offered "blog" postings from anonymous individuals contained in exhibit 11, nor does it find that such postings demonstrate a reasonable likelihood that the individuals purportedly represented there are potential class members. In fact, exhibit 11 reveals that plaintiffs' counsel himself posted five separate announcements to the website, each time requesting that anyone desiring to be part of a potential class action contact him and provide affidavits detailing their involvement with the defendants' alleged scam (Exhibit 11, p. 13, 33, 37, 38, and 40). Despite these efforts, plaintiffs still offer reliable evidence as to only twelve (12) potential class members. This court concludes that a class of this size is not "so numerous that joinder of all members is impracticable" as required by Rule 23(a). Indeed, the Supreme Court has observed that a class of fifteen (15) individuals would be too small to satisfy the numerosity requirement. <u>General Telephone</u> 446 at 330. Many federal courts have found that classes comprised of a greater number of individuals fail to satisfy the numerosity requirement. <u>See, e.g.</u>, <u>Monarch Asphalt Sales Co. v. Wilshire Oil Co. of Texas</u>, 511 F.2d 1073, 1077 (10th Cir. 1975) (denying certification as to thirty-seven (37) member class); <u>Peterson v. Albert M. Bender Co.</u>, 75 F.R.D. 661, 667 (N.D.Cal. 1977)

(denying certification as to thirty-five to forty-five (35-45) member class); <u>Maiden v. Biehl</u>, 582 F.Supp. 1209, 1219-20 (S.D.N.Y. 1984) (denying certification as to twenty-eight (28) member class).

For the foregoing reasons, this court concludes that the proposed class is not so numerous as to make joinder of all members impracticable. Plaintiffs, therefore, fail to satisfy the numerosity requirement of Rule 23(a)(1), which is a prerequisite to class certification. Because the failure to establish any of the requirements of Rule 23(a) is fatal to a motion for class certification, <u>Haywood</u>, 109 F.R.D. at 575, the court need not determine whether the remaining requirements of Rule 23(a) are satisfied. Accordingly, plaintiff's motion to certify a class is DENIED.

C.      Plaintiff's Motion to Appoint a Receiver

In a motion filed February 22, 2010, plaintiffs moved for the appointment of a receiver pendente lite for all defendants. The Gembala defendants filed a response in opposition (DE #11) on February 26, 2010. No other defendants filed a response to plaintiffs' motion within the time allowed for doing so.

The appointment of a receiver is not a matter of positive right, but rather lies within the sound discretion of the district court. <u>Lias v. U.S.</u>, 196 F.2d 90, 92 (4th Cir. 1952). Because receivership interferes very seriously with the defendant's property rights, a party seeking the appointment of a receiver must generally show that he has some "legally recognized right" in the property, such as a security interest, that amounts to more than a mere claim against the defendant. <u>See</u> <u>Piambino v. Bailey</u>, 757 F.2d 1112, 1131-32 (11th Cir. 1985) (noting that a receivership remedy was unavailable to plaintiffs that were merely prosecuting a tort action for the recovery of unliquidated money damages and had not yet reduced their claims to judgment). <u>See also</u> <u>Pusey &</u>

Jones Co. v. Hanssen, 261 U.S. 491, 497 (1923) (observing that even a judgment creditor is not entitled to have a receiver appointed unless he has exhausted his legal remedies and the judgment still remains unsatisfied). Further, even where the plaintiff has a "legally recognized right" in the defendants' property, the appointment of a receiver is an "extraordinary remedy" that should be employed with the "utmost caution" and granted only in cases of "clear necessity" to protect plaintiff's interests in the property. Kelleam v. Maryland Cas. Co. of Baltimore, Maryland, 312 U.S. 377 (1942). As such, the appointment of a receiver is an extraordinary measure which is justified only in extreme situations. Aviation Supply Corp. v. R.S.B.I Aerospace, Inc., 999 F.2d 314 (8th Cir. 1993).

The appointment of a receiver as to any defendant would be improper in this case. Plaintiffs have failed to allege more than a "mere claim" against any defendants. Even if plaintiffs' claim is meritorious, plaintiffs still have not demonstrated a "legally recognized right" in defendants' property, such as a security interest, which would favor the appointment of a receiver. Further, even if plaintiffs had demonstrated a "legally recognized right" in defendants' property, and not just a "mere claim" against the defendants, plaintiffs have failed to demonstrate satisfactorily that the extraordinary remedy would be appropriate in this case. While there is no precise formula for determining whether receivership is appropriate, factors typically favoring appointment include:

> a valid claim by the party seeking the appointment; the probability that fraudulent conduct has occurred or will occur to frustrate that claim; imminent danger that property will be concealed, lost, or diminished in value; inadequacy of legal remedies; lack of a less drastic equitable remedy; and likelihood that appointing the receiver will do more good than harm.

Aviation Supply, 999 F.2d at 316-17. The court is not convinced that these factors are satisfied in this case. Plaintiffs have not demonstrated a probability that fraudulent conduct has occurred or will

occur to frustrate their claim. Although plaintiffs allege fraudulent conduct by the defendants as the basis of their entitlement to relief, plaintiffs have not alleged that defendants have or will engage in fraudulent conduct *to frustrate their claim*. Plaintiffs have not, for example, alleged that defendants have fraudulently conveyed assets to frustrate the recovery of a potential judgment. Nor have plaintiffs demonstrated to the court's satisfaction an imminent danger that property will be concealed, lost, or diminished in value, or that ordinary legal remedies or less drastic equitable remedies would be inadequate in this case. Finally, plaintiffs have not shown that appointing the receiver would do more good than harm. In fact, the opposite seems true. Plaintiffs allege only $895.00 actual damages. In light of this relatively low sum, this court is of the opinion that appointing a receiver to divest defendants of "all of their earthly possessions," as requested by plaintiffs (plaintiff's memorandum in support, p. 16), seems unwarranted in this case.

The pre-adjudication divestment of a defendant's rights and control in his property or assets is a drastic tactical weapon that is to be employed in unique and special circumstances only. This court has determined, in its discretion, that this is not such a case. For the foregoing reasons, plaintiff's motion to appoint receivers for all defendants is DENIED.

D.     The Gembala Defendants' Motion to Dismiss

In a motion filed February 26, 2010, the Gembala defendants moved to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Gembala defendants additionally moved to strike certain portions of the amended complaint pursuant to Rule 12(f). Plaintiffs responded to defendants' motion on March 14, 2010.

1.     Standards of Review

12

a.    Lack of Subject Matter Jurisdiction under Rule 12(b)(1)

Federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and by statute.  Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).  The existence of subject matter jurisdiction is a threshold issue, and absent a proper basis for subject matter jurisdiction, a case must be dismissed.  Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 96 (1998).  Under Rule 12(b)(1), the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant.  McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).  When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).  The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  Id.

b.    Failure to State a Claim under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).  A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the

plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949, and Twombly, 550 U.S. at 557).

> 2.     Analysis

>> a.     Lack of Subject Matter Jurisdiction under Rule 12(b)(1)

Plaintiffs allege subject matter jurisdiction on several grounds. First, plaintiffs argue that this court has diversity jurisdiction over all of plaintiffs' claims under 28 U.S.C. § 1332(a). Alternatively, plaintiffs argue that this court has federal question jurisdiction over plaintiffs' RICO claim under 28 U.S.C. § 1331, and that the court can exercise supplemental jurisdiction over plaintiffs' remaining state law claims pursuant to 28 U.S.C. § 1367. The court addresses each alleged basis for subject matter jurisdiction in turn.

Plaintiffs first allege that diversity jurisdiction exists in this case. Under 28 U.S.C. § 1332(a), the district courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Plaintiffs have alleged to the court's satisfaction that diversity of citizenship exists in this case, as plaintiffs are citizens of North Carolina and all defendants are citizens either of Pennsylvania or New Jersey. The court concludes, however, that diversity jurisdiction does not exist because plaintiffs' claims do not meet the amount in controversy requirement.

In determining whether the amount in controversy requirement is met, the sum claimed by the plaintiff controls unless it is apparent to a legal certainty that the plaintiff cannot recover the amount claimed. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). Plaintiffs allege $895.00 actual damages - $74,105 short of the amount in controversy requirement. To establish that the $75,000.00 jurisdictional minimum is satisfied, plaintiffs argue they are entitled to punitive damages in excess of that amount. For the reasons that follow, this court concludes that it is clear to a legal certainty that the plaintiffs can not recover punitive damages in an amount sufficient to satisfy the amount in controversy requirement.

Punitive damages are properly considered when determining whether the amount in controversy requirement is satisfied. Loss v. Blankenship, 673 F.2d 942 (7th Cir. 1982). Ordinarily, the sum of damages alleged by the plaintiff is accepted by the court in making the amount in controversy determination. St. Paul, 303 U.S. at 289. However, in order to ensure that Congress' limits on diversity jurisdiction are properly observed, when a claim for punitive damages comprises the bulk of the amount in controversy, and may have been colorably asserted solely or primarily for the purpose of conferring diversity jurisdiction, the claim for punitive damages should be given particularly close scrutiny. Packard v. Provident National Bank, 994 F.2d 1039, 1046 (3d Cir. 1993) (cited favorably in SouthStar Funding, L.L.C. v. Warren, Perry & Anthony, P.L.L.C., 445 F.Supp.2d 583, 584 (E.D.N.C. 2006)). In determining whether damages are recoverable to a legal certainty, the district court must look to the forum state's law regarding the availability of punitive damages. Vance v. W.A. Vandercook Co., 170 U.S. 468 (1898). It is also to be noted, however, that there are constitutional limitations on the award of punitive damages which must be considered as well. State Farm Mutual Auto Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003).

15

It is clear to a legal certainty that plaintiffs can not recover sufficient punitive damages to establish the amount in controversy requirement. First, plaintiffs' claim for punitive damages certainly comprises the bulk of the amount in controversy, as plaintiffs' only alleged actual damages are $895.00. Accordingly, close scrutiny as to the legal certainty of recovery is appropriate. Packard, 994 F.2d at 1046. Under the law of the forum state, punitive damages may be awarded if the plaintiff is entitled to compensatory damages and either fraud, malice, or willful or wanton conduct was present and was related to the injury for which compensatory damages are awarded. N.C.G.S. § 1D-15(a). As plaintiffs have alleged that defendants acted fraudulently in causing their actual damages, punitive damages may very well be appropriate in this case. Plaintiffs argue that because Section § 1D-25(b) limits punitive damages to the greater of three times the amount of compensatory damages or $250,000.00, the amount in controversy requirement is satisfied. Although under North Carolina law, punitive damages in this case would be limited only to $250,000.00, punitive damages are further restricted by constitutional limitations. The Supreme Court has recognized that punitive damage awards are limited by the Due Process clause of the Fourteenth Amendment. State Farm, 538 U.S. at 425. The Due Process clause prohibits the imposition of "grossly excessive or arbitrary punishments." Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 433 (2001). The Supreme Court has declined to impose a mathematical formula to calculate the constitutional limit on punitive damages in any given case. See BMW of North America, Inc. v. Gore, 517 U.S. 559, 582 (1996). However, the Supreme Court has generally determined that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." State Farm, 538 U.S. at 485. Indeed, the Supreme Court has concluded that an award of punitive damages which is more

than four times the amount of compensatory damages might be close to the line of constitutional impropriety.  Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1, 23-24 (1991).

Here, in order to satisfy the amount in controversy, plaintiffs would have to recover punitive damages vastly exceeding four times the amount of compensatory damages, and still far in excess of a single-digit ratio between punitive and compensatory damages.  Indeed, to satisfy the amount in controversy, plaintiffs would have to recover, at minimum, punitive damages over eighty-three (83) times as great as their alleged compensatory damages. As the amount of punitive damages necessary to meet the amount in controversy requirement would be unconstitutional if awarded, it is clear to a legal certainty that the plaintiffs can not recover the jurisdictional minimum of $75,000.00.  Therefore, diversity jurisdiction does not exist in this case.  This court further notes that if plaintiffs could satisfy the amount in controversy requirement by pleading punitive damages in amounts more than eighty (80) times greater than alleged compensatory damages, federal courts would be required to hear almost any state law claim where diversity of citizenship happens to exist between the parties.  This certainly could not be allowable, as it is well-established that federal courts are courts of limited jurisdiction and that diversity jurisdiction was not intended to "flood the federal courts with minor disputes."  See Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 552 (2005).

Plaintiffs also allege subject matter jurisdiction on the basis of federal question jurisdiction.  Federal district courts have original jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Under the well-pleaded complaint rule, federal question jurisdiction is limited to actions in which the plaintiff's well-pleaded complaint raises an issue of federal law.  See Louisville & Nashville R.R. Co. V. Mottley, 211 U.S. 149, 152

(1908).

Of the thirteen count alleged in plaintiffs' amended complaint, only one raises an issue of federal law. Count VI alleges a violation of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968. The Gembala defendants argue in their motion to dismiss that federal question jurisdiction does not exist in this case because Count VI is not a properly pleaded RICO claim and therefore can not survive a Rule 12(b)(6) motion. Because Count VI is the only federal claim in plaintiffs' amended complaint, they argue, federal question jurisdiction is not established.

Considering such a challenge to a supposedly federal claim requires a two-step approach:

> At the threshold is the question whether the federal claim as pleaded is "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court] or otherwise completely devoid of merit as not to involve a federal controversy" so that dismissal for lack of federal jurisdiction is warranted without more. If that cannot be said, the court of necessity has and must exercise jurisdiction to decide the federal question of whether the cause of action exists. The preliminary jurisdictional test of facial insubstantiality is a rigorous one against the challenger. The mere claim that a right exists under federal law suffices to avoid summary dismissal unless it is facially insubstantial or frivolous, and even a non-frivolous claim that a remedy may be implied from a federal statute will suffice. If dismissal for facial insubstantiality is avoided, further inquiry into the existence of federal question jurisdiction of course turns on the existence of the underlying claim as pleaded. The existence of such a claim is of course a necessary predicate for the existence of federal jurisdiction over it. But if it is determined on this inquiry that jurisdiction fails because no such federal claim exists, the proper disposition is to dismiss on the merits for failure to state a claim rather than for want of subject matter jurisdiction.

Ridenour v. Andrews Federal Credit Union, 897 F.2d 715, 719 (1990). Applying this two-step analysis, this court concludes that federal question jurisdiction exists over Count VI. It cannot be said that Count VI, which alleges a violation of the federal Racketeer Influenced and Corrupt Organizations Act, fails the "facial insubstantiality" test under Ridenour. Count VI is not so insubstantial or implausible so as not to involve a federal controversy within the jurisdiction of the

district court. Having survived the first step of the federal question jurisdiction challenge, Count VI is now subject to analysis as to the sufficiency of its pleading. The Gembala defendants argue that Count VI is not properly pleaded and can not survive under Rule 12(b)(6), therefore federal question jurisdiction does not exist. Jurisdiction, however, is not defeated by the possibility that the complaint might fail to state a cause of action on which the plaintiffs could actually recover. Bell v. Hood, 327 U.S. 678, 682 (1946).

> For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

Id. See also Donohoe Const. Co., Inc. v. Montgomery Cty. Council, 567 F.2d 603, 607 (4th Cir. 1977) (holding that the district court acted properly in assuming federal question jurisdiction to decide the merits of the controversy so long as the questions raised were not frivolous on their face).

Because Count VI of the amended complaint is not "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court] or otherwise completely devoid of merit as not to involve a federal controversy," dismissal for lack of federal jurisdiction is unwarranted in this case. See Ridenour, 897 F.2d at 719. This court must exercise jurisdiction to decide the question of whether Count VI fails to state a claim, to which question the court now turns.

b.      Failure to State a Claim under Rule 12(b)(6)

The Gembala defendants argue that the plaintiffs' RICO claim is not properly pleaded and should be dismissed for failure to state a claim under Rule 12(b)(6). Like all federal complaints, the

19

sufficiency of a civil RICO claim is judged in accordance with the notice pleading requirement of Rule 8(a), requiring that complaints contain "a short and plain statement of the claim showing that the pleader is entitled to relief." At the same time, however, the special pleading requirement of Rule 9(b), requiring that for averments of fraud, "the circumstances constituting fraud . . . be stated with particularity," applies to civil RICO claims as well. See Schreiber Distrib. Co. V. Serv-Well Furniture Co., 806 F.2d 1393, 1400-01 (9th Cir. 1986). A well-pled civil RICO claim, therefore, must strike a balance between the requirement for brevity under Rule 8 and the requirement for particularity under Rule 9.

This court finds that plaintiffs have not pled each element of the RICO claim with the brevity required by Rule 8(a). As a threshold matter, plaintiffs have failed to explain precisely the type of RICO offense alleged. By broadly claiming in Count VI that defendants have violated every subsection of § 1962 ("all in violation of 18 U.S.C. § 1962(a), (b), and (c)"), without giving any treatment of the subsections individually, plaintiffs make it nearly impossible to discern how, exactly, the allegations establish that defendants have violated any particular subsection. The individual RICO offenses, articulated in three separate subsections of § 1962, have different elements by virtue of their distinct statutory definitions. Count VI merely incorporates "the facts as pleaded above" without articulating which of those tortured 164 individual paragraphs, which span thirty-five (35) pages of the amended complaint, establish separate violations of each individual subsection of § 1962. This court refuses, and refuses to require the defendants, to wade through thirty-five (35) pages of allegations in an attempt to match them with the distinct elements of each subsection of § 1962 in order to determine if the complaint properly states a claim for relief. This court's position is firmly in line with the many federal courts that have dismissed lengthy, verbose,

and confusing RICO claims for failure to state a claim "plainly" as required by Rule 8(a).  See, e.g.

Viacom, Inc. V. Harbridge Merchant Services, Inc., 20 F.3d 771, 776 (7th Cir. 1994); Wade v.

Hopper, 993 F.2d 1246, 1249 (7th Cir. 1993); Confederal Mem'l Ass'n Inc. V. Hines, 995 F.2d 295,

298 (D.C.Cir. 1993) (describing dismissal of RICO claim by district court for failure to comply with

Rule 8(a)); Walker v. Windstream Communication, Inc., 2007 WL 4180721 at *4 (M.D.N.C. 2007);

Resource N.E. of Long Island, Inc. v. Town of Babylon, 28 F.Supp.2d 786, 795 (E.D.N.Y. 1998)

(holding that "the fact that plaintiffs assert . . . RICO claims does not justify a verbose complaint"

and dismissing as "unnecessarily prolix and in violation of Rule 8").

In sum, plaintiffs' amended complaint does not explain how the content of the 164 lengthy

paragraphs incorporated in Count VI establishes the requirements of any of the subsections of §

1962 which Count VI baldly alleges defendants to have violated.  In fact, the only reference to §

1962 in the entire forty-two (42) page amended complaint is the bare reference to the statute in

Count VI itself.  Not once have plaintiffs enumerated the elements of a valid claim under any of the

subsections of § 1962, nor have plaintiffs explained how the facts as alleged support the

establishment of those elements.  As aptly articulated by the Fifth Circuit in Old Time Enterprises,

Inc. v. International Coffee Corp.:

> It is perhaps not impossible that a RICO claim may lie hidden or buried somewhere
> in [plaintiff's] complaints . . [the] pleadings do not unequivocally negate such a
> possibility.  However, they also do not state a RICO claim against defendants with
> sufficient intelligibility for a court or opposing party to understand whether a valid
> claim is alleged and if so, what it is.

862 F.2d 1213, 1218 (5th Cir. 1989).  This court will not embark on an excursion to interpret

plaintiffs' verbose, tortured amended complaint to extract a RICO claim that might, but might not,

lie hidden or buried somewhere within it.  Accordingly, Count VI  is dismissed without prejudice

for failure to state a claim.

c.   Court Declines to Exercise Supplemental Jurisdiction over State Law Claims

As discussed above, this court had federal question jurisdiction over plaintiffs' RICO claim as it was not a facially insubstantial claim under federal law.  As a consequence of the existence of federal question jurisdiction over Count VI, plaintiffs alleged supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the twelve (12) additional state law claims set forth in the amended complaint.  Having dismissed the only claim that invoked the original basis for subject matter jurisdiction, all that now remains before the court are the state law claims.   Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim if, among other things, the district court has dismissed all claims over which it has original jurisdiction.  Pursuant to § 1367(c), this court declines the exercise of supplemental jurisdiction over the additional claims in this case.

**CONCLUSION**

For the foregoing reasons, the court DENIES plaintiff's motion to certify a class (DE #27), DENIES plaintiff's motion to appoint a receiver for all defendants (DE #9), GRANTS the Gembala defendants' motion to dismiss (DE #13), and DENIES AS MOOT the Gembala defendants' motion to strike (DE #13).  In addition, defendant SPS and defendant NMCG are DISMISSED from this action.  Because only the Gembala defendants moved to dismiss plaintiffs' claims, the dispositive nature of this order is limited to plaintiffs' claims as against the Gembala defendants.  This order does not dispose of plaintiffs' claims against defendant Malone.[1]  Said defendant shall have fourteen

---

[1]      As noted, entries of default have been made against defendants CAS and Frisch.

(14) days from date of entry of this order to file any supplement to plaintiff's report and plan, earlier

filed jointly with the Gembala defendants (DE # 42), now dismissed from this action. Thereafter,

the court will enter its case management order premised upon plaintiffs' report, any supplement

thereto filed on behalf of defendant Malone, and such other and further matters that bear on

construction of a schedule for the just, speedy, and inexpensive determination of the action. Fed.

R. Civ. P. 1.

      SO ORDERED, this the 30th day of September, 2010.

 

_____
LOUISE W. FLANAGAN
Chief United States District Judge