IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:10-CV-4-FL

| | |
|---|---|
| MICHAEL MANUEL and DOROTHY MANUEL, | ) ) ) |
| Plaintiffs, | ) ) ORDER |
| v. | ) ) |
| MICHAEL MALONE, | ) ) |
| Defendant. | ) ) |

This matter is before the court on plaintiffs' motion for summary judgment (DE 85) and amended motion to certify class (DE 90), as to both of which defendant has responded, pro se, in opposition. In this posture, the matter is ripe for ruling.

STATEMENT OF THE CASE

Plaintiffs filed their original complaint on January 14, 2010, asserting a federal claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") along with several state law claims, all arising out of an alleged mortgage modification scam. In an amended complaint filed February 8, 2010, plaintiffs named as defendants several individuals and entities, including the present sole defendant in this case, Michael Malone, as well as several individuals and entities who have now been dismissed from this case, including Joseph A. Gembala, III, Esq. and his law firm ("Gembala"), who allegedly acted in association with defendant. Plaintiffs also moved to certify a class.

As pertinent to the present proceedings, on September 14, 2010, the court set aside an entry of default as to defendant, who has appeared pro se throughout this case, and the court deemed filed

as of August 9, 2010, defendant's answer denying the material allegations of the original complaint. On September 30, 2010, the court entered an order dismissing all claims against Gembala, including on the basis that "plaintiffs have not pled each element of the RICO claim with the brevity required by Rule 8(a)." (Order at 20).

On October 20, 2010, plaintiffs moved for leave to file a second amended complaint, against defendant and others then named as defendants including Gembala. Plaintiffs also filed an amended motion to certify class. On February 2, 2011, the court held in abeyance plaintiff's motion to certify pending resolution of the motion to amend. On July 27, 2011, the court allowed the motion to amend and denied the motion to certify without prejudice as premature.

Defendant and Gembala filed motions to dismiss for failure to state a claim in October 2011. After the motions to dismiss were filed, plaintiff voluntarily dismissed Gembala and other named defendants in October 2011 and May 2012, thus leaving defendant as the sole remaining defendant in this case. On August 17, 2012, Magistrate Judge William A. Webb entered a memorandum and recommendation (M&R) recommending that defendant's motion to dismiss be denied, and, to the extent still viable, that Gembala's motion be granted. On September 10, 2012, this court adopted the recommendation of the magistrate judge, granted Gembala's motion to dismiss and denied defendant's motion to dismiss. The court directed the parties to meet and confer to develop a plan for discovery and remaining case deadlines.

On October 30, 2012, the parties filed a joint Rule 26(f) report, and on November 8, 2012, the court directed the parties to tender a proposed order, devoid of surplusage, memorializing proposed deadlines. Based upon resubmitted proposed order, the court entered a scheduling order on November 29, 2012, which set a deadline for close of discovery by March 29, 2013, and

2

dispositive motions by April 30, 2013.

On April 30, 2013, plaintiffs filed a motion for summary judgment, and memorandum in support thereof, requesting entry of judgment in favor of plaintiffs and putative class in the amount of $7,728,000.00. Should class certification be denied, plaintiffs seek damages in the amount of $5,370, without prejudice to jury trial for common law fraud and punitive damages thereon, together with costs and attorney's fees.

On May 13, 2013, defendant filed a response and memorandum in opposition to summary judgment. On June 6, 2013, plaintiff filed an amended motion to certify class, to which defendant responded in opposition. On August 20, 2013, the court directed defendant to file in paper copy one of the exhibits he submitted on compact disc format in opposition to summary judgment. Mail sent to defendant was returned undeliverable, and defendant filed a notice of change of address on September 6, 2009, followed by a response to the court's order on September 20, 2013.

## STATEMENT OF UNDISPUTED FACTS

Facts not presently in dispute as pertinent to the pending summary judgment motion include the following.[1] Defendant was at all times relevant to this matter co-owner of a company named Secure Property Solutions, LLC ("SPS"), along with Christopher Frisch ("Frisch"), which company provided loan modification services to the public. (Pls' Ex. V, Joint Petition at 3). In March, 2009, defendant, Frisch, and Ernesto Ranieri, the president of SPS, met with Gembala to discuss having

---

[1] The record includes an October 25, 2012, Pennsylvania Supreme Court order in the matter of Office of Disciplinary Counsel v. Joseph A. Gembala, III, attached as the sole exhibit to plaintiffs' motion for summary judgment; depositions submitted in opposition to summary judgment by defendant Malone; and other documents attached as exhibits to the second amended complaint and in opposition to summary judgment to which no objection as to admissibility or authenticity is asserted. The pertinence of individual record items will be addressed in the analysis further below.

3

Gembala affiliate with SPS to enable SPS to continue to provide loan modification services in New Jersey without a debt adjuster license. (Id. at 4). "Gembala believed after meeting with the owners and executives of SPS that the company had the experience and ability to handle the in-coming loan modifications cases compentently and expeditiously." (Id. at 113). Following negotiations, in April 2009, Gembala agreed to affiliate his law firm with SPS. (Id. at 12).

As part of the affiliation agreement, Gembala agreed to advertise loan modification services on Gembala's firm website. The website included the following representations:

> LOAN MODIFICATION
>
> At Joseph A. Gembala, III & Associates, one of the areas of the law in which we specialize is the representation of homeowners who are behind on their mortgage payments and\or are facing mortgage foreclosure. Due to the current economic crisis, the number of homeowners who are in default or are facing foreclosure has increased drastically. Joseph A. Gembala, III & Associates and his processing center, Secure Property Solutions, LLC, have helped countless homeowners during this difficult time through the process of a loan modification.
>
> Contact Joseph A. Gembala, III & Associates to discuss the possibility of a loan modification. Almost any homeowner who is struggling with mortgage payments may be a candidate for the granting of a loan modification. Benefits of a loan modification, if granted, may result in any or all of the following:
>
> • Lowering your monthly mortgage payment
> • Forgiveness of your past due payments
> • Lowering your interest rate to a fixed interest rate
> • Reduction of the principal balance
> • Stopping the foreclosure process
>
> Why you need an experienced real estate attorney:
>
> • Bank loss mitigation specialists are skilled negotiators and need to protect the interest of the bank
> • The loan modification is a legal process and, if not handled properly, may make things worse for you in the long run
> • Our attorneys and negotiators have extensive experience negotiating with banks and they understand state and federal laws as well as lending regulations

- Our attorneys can use the Truth in Lending Act (TILA) and the Real Estate and Settlement Procedures Act (RESPA) to your advantage
- Banks listen to attorneys because they know the law

> Don't wait any longer. Timing is vital with the lenders. Contact Joseph A. Gembala, III & Associates to stop the foreclosure process and save your home. Our experienced team will gather all of the necessary information to present your case to the lender's loss mitigation negotiator and work diligently to achieve a successful loan modification in a fast and efficient manner. The sooner you take action the better.

(Id. at 15-16; Second Am. Compl., Ex. B). Nearly identical statements appeared on the SPS website. (Pls' Ex. V, Joint Petition at 17-18; Second Am. Compl., Ex. C).

In June, 2009, plaintiffs, who reside in North Carolina, were seeking assistance in reducing their mortgage payments. (Pls' Ex. V, Joint Petition at 18). Plaintiffs reviewed the SPS website and, on or about June 18, 2009, plaintiff Dorothy Manuel completed an on-line questionnaire on the SPS website, in which she provided contact information and requested a reply. (Id.). On or about June 18, 2009, an SPS employee who identified himself as Scott Feltman contacted plaintiff Dorothy Manuel by telephone. (Id. at 19). Mr. Feltman stated to plaintiff that he could reduce plaintiffs' monthly mortgage payments if they made an $895.00 advance payment. (Id.). Plaintiff Dorothy Manuel decided to make the $895 advance payment and provided Mr. Feltman with her debit card information to process the payment. (Id.). On June 18, 2009, Gembala processed and received $895.00 payment from plaintiffs' account. (Id.). Per the affiliation agreement with SPS, Gembala kept $395.00 of this sum and transferred the remaining $500.00 to SPS. (Id. at 13).

On June 19, 2009, plaintiffs received a package via Federal Express, which contained loan modification paperwork from SPS, which included the following representations:

> Be advised that this law firm along with its modification processing center, Secure Property Solutions, is here to help you with your loan modification, aiding you to stay in your home and keep your dream alive.

5

> Please know that Secure Property Solutions and our legal staff will be here to help you with any questions regarding your disclosures and/or the modification process.
>
> ALL CHECKS ARE MADE PAYABLE TO: JOSEPH A. GEMBALA, III.
>
> Rest assured that our team has expertise in mortgage and real estate law.
>
> By signing below, you hereby agree to abide by the legal fee retaining agreement.
>
> The undersigned client (referred to as "Client" whether one or more) employs Joseph A. Gembala, III Attorney at Law and the Processing Center of Secure Property Solutions, LLC (referred to as "Loss Mitigation"), to act as Client's agent in assisting client with certain problems resulting from mortgage delinquency and/or foreclosure situations.
>
> REFUND POLICY: If no solution what so ever is reached between Joseph A. Gembala, III, Attorney at Law and the Processing Center of Secure Property Solutions, LLC and the homeowner's mortgage servicer there will be a 100% refund of your deposit minus $895 attorney retainer fee. If the client is in violation of the Client's Responsibilities During Loss Mitigation Processing the refund will be determined case by case.

(Id. at 6-7) (emphasis in original). Plaintiffs returned the loan modification paperwork that they had completed, signed, and dated. (Id. at 23).

On or about July 6, 2009, an SPS employee who identified himself as Mr. Kevin Malone telephoned plaintiffs and told them he was going to contact their mortgagee. (Id.). SPS was unable to modify plaintiffs' mortgage. (Id.). Plaintiffs' mortgagee contacted them to advise that it did not modify mortgages and that SPS would not be able to modify their mortgage. (Id.). In early October, 2009, Feltman contacted plaintiffs to advise that they would be issued a refund. (Id.). Thereafter, plaintiffs contacted SPS regarding their refund. (Id.) Sometime in November, 2009, Feltman again contacted plaintiffs to advise that they would be issued a refund after November 11, 2009. (Id.). In late November 2009, plaintiffs again contacted SPS and advised that they would file a lawsuit unless their received a complete refund. (Id.) Gembala and SPS failed to provided plaintiffs with

6

any refund of the $895.00 advance they paid.

Thirty-two (32) additional customers of Gembala and SPS requested to receive loan modification services through Gembala and SPS, made advance payments for such services ranging from $300 to $2595, did not have a successful loan modification, and did not receive a refund from Gembala or SPS. (Id. at 18-19, 112).

COURT'S DISCUSSION

A. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Summary judgment is not a vehicle for the court to weigh the evidence and determine the truth of the matter, but to determine whether a genuine issue exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Only disputes between the parties over facts that might affect the outcome of the

7

case properly preclude the entry of summary judgment. Anderson, 477 U.S. at 247-48. Accordingly, the court must examine the materiality and the genuineness of the alleged fact issues in ruling on this motion. Id. at 248-49.

B. Analysis

    1. Summary Judgment

The court begins its analysis with plaintiffs' federal RICO claim, as this is the sole basis for federal subject matter jurisdiction in this case. To establish liability under RICO, plaintiffs must prove "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Morley v. Cohen, 888 F.2d 1006, 1009 (4th Cir. 1989). "'Enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "Racketeering activity" includes, *inter alia*, "any act which is indictable" under specifically enumerated criminal provisions, including those relating to mail and wire fraud set forth in 18 U.S.C. §§ 1341, 1343. 18 U.S.C. § 1961(1). Finally, a "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

In addition, in order to recover damages in a civil action under RICO, "a person [must] be injured in his business or property 'by reason of' a § 1962 violation." Chisolm v. TranSouth Fin. Corp., 95 F.3d 331, 336 (4th Cir. 1996) (quoting 18 U.S.C. § 1964(c)). "[I]t is not enough that a civil RICO plaintiff prove that, but for the defendant's violation, he would not have been injured; he must also show that the violation proximately caused the harm." Id. (citations omitted). "The pertinent inquiry in determining the existence of proximate, or 'legal' cause, is 'whether the conduct

8

has been so significant and important a cause that the defendant should be held responsible.'" Id. (quoting Brandenburg v. Seidel, 859 F.2d 1179, 1189 (4th Cir.1988)). Moreover, where plaintiffs base a civil RICO claim on predicate acts comprising alleged fraudulent misrepresentations, as here, "the fraud must be a 'classic' one," in the sense that "the plaintiff must have justifiably relied, to his detriment, on the defendant's material misrepresentation." Chisolm v. TranSouth Fin. Corp., 95 F.3d 331, 337 (4th Cir. 1996); Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 233 (4th Cir. 2004) (same).

Plaintiffs have failed to meet the initial burden of demonstrating the absence of any genuine issue of material fact with respect to liability under RICO. Much to the contrary, based solely on the evidence of record submitted by plaintiffs, the court is considering granting summary judgment in favor of the defendant, on the basis that plaintiffs have not brought forth sufficient evidence to establish a claim under RICO. In particular, on the present record, plaintiffs have not demonstrated that defendant engaged in predicate acts of racketeering, or that defendant conspired to engage in acts of racketeering. Among other deficiencies, plaintiffs have not demonstrated that the representations made on the SPS website or SPS loan modification paperwork were false or that plaintiffs justifiably relied on any false representations to their detriment.

In support of their summary judgment motion, plaintiffs claim that the court must accept the allegations in the second amended complaint as conclusively established because defendant did not file an answer to the second amended complaint. (Pls' Mem. at 1, 7). This argument is flawed in several respects. As an initial matter, the proper avenue for seeking relief on a defendant's failure to answer a complaint is through motion for default judgment, under Federal Rule of Civil Procedure 55, which plaintiffs did not do. Instead, following denial of defendant's motion to dismiss, plaintiffs

9

participated in a Rule 26(f) conference for the purposes of setting forth a schedule for the remainder of this case, including a time period for discovery and dispositive motions. In addition, plaintiffs' suggestion that defendant has not offered a defense is unsupported, where defendant filed an answer to the first amended complaint, filed a motion to dismiss the second amended complaint, and timely filed opposition to plaintiffs' motion for summary judgment and motion to certify class, including voluminous exhibits in opposition to summary judgment.

Moreover, while allegations not denied are deemed admitted for purposes of responsive pleadings under Federal Rule 8(b)(6), the summary judgment rule requires a party "asserting that a fact cannot be or is genuinely disputed [to] support the assertion" by admissible evidence in the record. Fed. R. Civ. P. 56(c)(1)-(2). Although the Fourth Circuit has not directly addressed the issue, several courts within the Fourth Circuit have observed that a defendant's failure to answer or properly answer a complaint does not provide a basis for granting summary judgment. See, e.g., Wall v. China, 2:12-CV-618-MBS-BHH, 2013 WL 212611 *2 (D.S.C. Jan. 7, 2013) (court should deny summary judgment motion where based solely on failure to timely answer complaint); Tryon v. AgriNova Corp., Inc., CIV.A. WGC-09-329, 2011 WL 332415 *13 (D. Md. Jan. 31, 2011) (holding that late-filed answer does not constitute admission of factual allegations of complaint for purposes of summary judgment); Foy v. Ballard, CIV.A. 5:08CV42, 2009 WL 667201 *21 n.6 (N.D.W. Va. Mar. 12, 2009) (court may grant summary judgment for defendant despite failure to answer properly); Bethea v. U.S. Dep't of Labor, C/A 4:07-2257-RBH, 2008 WL 3992652 * 4 (D.S.C. Aug. 25, 2008) (motion for summary judgment is not the appropriate vehicle where plaintiff moves for judgment based upon failure to file an answer).

Plaintiffs also suggest that the court should be bound by statements in the M&R regarding

10

the viability and characteristics of plaintiffs' RICO claims, where the court adopted the recommendation of the M&R in denying the motion to dismiss by defendant. (Pls' Mem. at 7). The motion to dismiss, however, was decided under a different standard and solely on the basis of the allegations in the complaint, which the court viewed in the light most favorable to plaintiffs. The relevant inquiry under the motion to dismiss standard is whether the factual allegations are "enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555. By contrast, as noted above, the party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. And, the court may make a summary judgment determination on the basis of its review of the entire record, where material facts not in dispute support entry of summary judgment. Fed. R. Civ. P. 56(c)(3) & (f). Accordingly, the court is not bound at this stage of the case by its prior analysis of defendant's motion to dismiss.

Finally, plaintiffs suggests that the Pennsylvania Supreme Court Order suspending Gembala's law license, on the basis of a consent petition for discipline between the Pennsylvania Office of Disciplinary Counsel and Gembala, included in Exhibit V to plaintiffs' motion for summary judgment, is determinative of their motion for summary judgment. The court notes that attached to the consent petition is an affidavit by Gembala in which he acknowledges, under oath, "that the material facts set forth in the Joint Petition are true." (Pls' Ex. V at 128). Nevertheless, as set forth above, the court has determined that the facts stated in the consent petition are not sufficient to establish civil RICO liability against defendant.

In sum, plaintiffs have failed to meet their initial burden of demonstrating the absence of any genuine issue of material fact with respect to liability under RICO. Plaintiffs' motion for summary

11

judgment therefore will be denied as to the RICO claim. With respect to plaintiffs' remaining state law claims, where each of these are predicated on alleged fraud in the manner of the RICO claim, the court also determines that plaintiffs have not established entitlement to summary judgment. Further, pursuant to Fed. R. Civ. P. 56(f), the court gives notice to plaintiffs that, on the basis of the undisputed facts as set forth above, and on the basis of other materials presently in the record, the court may grant summary judgment for defendant. The court will direct plaintiffs to show cause within twenty-eight (28) days of the date of this order why summary judgment shall not be granted for defendant. Defendant will have fourteen (14) days of plaintiffs' response to file a reply, if any.

    2. Motion to Certify Class

Where the court is considering summary judgment in favor of defendant, determination of plaintiffs' motion to certify class is premature. See Manuel v. Gembala, 7:10-CV-4-FL, 2011 WL 3240493 *4 (E.D.N.C. July 27, 2011); see also Boyce v. Wachovia Sec., LLC, 5:09-CV-263-FL, 2010 WL 1253744 *8 (E.D.N.C. Feb. 17, 2010) (noting one factor in timing of class certification is whether a defendant may "win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified") (quoting Fed. R. Civ. P. 23, 2003 Advisory Committee Notes). Accordingly, plaintiffs' motion to certify class will be denied without prejudice.

## CONCLUSION

Based on the foregoing, plaintiffs' motion for summary judgment (DE 85) is DENIED. Plaintiff's motion to certify class (DE 90) is DENIED WITHOUT PREJUDICE. Further, pursuant to Federal Rule of Civil Procedure 56(f), the court gives NOTICE to plaintiffs that, on the basis of the undisputed facts as set forth herein, and on the basis of other materials presently in the record,

the court may grant summary judgment for defendant. The court DIRECTS plaintiffs to show cause within twenty-eight (28) days of the date of this order why summary judgment shall not be granted for defendant. Defendant will have fourteen (14) days of plaintiffs' response to file a reply, if any.

So ordered, this the 10th day of October, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge